# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| **IN RE HARTFORD FIN. SVC. GROUP INC. ERISA LITIG.** ) ) ) ) ) ) ) ) | MASTER FILE: 3:08-CV-01708 (PCD)<br><br>THIS DOCUMENT RELATES TO:<br>ALL ERISA ACTIONS |

## SETTLEMENT AGREEMENT AND RELEASE

## TABLE OF CONTENTS

**Page**

RECITALS ......................................................................................................... 1

I.      DEFINITIONS.......................................................................................... 5

II.     MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF
        PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES...................... 11

III.    PAYMENTS TO THE SETTLEMENT CLASS............................................... 14

IV.     CHANGES TO BUSINESS PRACTICES...................................................... 18

V.      SETTLEMENT ADMINISTRATION............................................................ 23

VI.     RELEASE.................................................................................................. 24

VII.    CASE CONTRIBUTION AWARDS............................................................ 25

VIII.   ATTORNEYS' FEES................................................................................. 25

IX.     CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF
        SETTLEMENT.......................................................................................... 27

X.      NO ADMISSION OF WRONGDOING......................................................... 28

XI.     MISCELLANEOUS................................................................................... 30

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement")[1] is entered into on November __, 2011 by and among Plaintiffs Douglas W.J. Ninow, S. Carl Morello, Betsy C. Dobson, Susan Richard, Margaret Mundy, Joe DeSalvo, Denise Jump, and Frank DeJesu, on their own behalf and on behalf of the Settlement Class defined herein, and The Hartford Financial Services Group, Inc. (defined below as "The Hartford").

## RECITALS

WHEREAS, on November 12, 2008, Plaintiff Douglas W.J. Ninow instituted *Ninow v. The Hartford Financial Services Group, Inc. et al.*, No. 3:08cv01708 (D. Conn.) against The Hartford, certain of its subsidiaries, officers and directors, as well as persons and entities involved in the administration of, and investment of assets in, The Hartford Investment and Savings Plan (defined below as the "Plan"), alleging claims under the Employee Retirement Income Security Act of 1974 ("ERISA");

WHEREAS, thereafter, in November and December 2008, six additional and substantially identical cases were filed: *Morello v. The Hartford Financial Services Group, Inc. et al.*, No. 3:08-cv-01771 (D. Conn.); *Dobson v. The Hartford Financial Services Group, Inc. et al.*, No. 08-cv-1792 (D. Conn.); *Richard et al. v. The Hartford Financial Services Group, Inc. et al.*, No. 08-cv-1803 (D. Conn.); *DeSalvo v. The Hartford Financial Services Group, Inc. et al.*, No. 08-cv-1811 (D. Conn.); *Jump v. The Hartford Financial Services Group, Inc. et al.*, No. 08-cv-1840 (D. Conn.); and *Dejesu v. The Hartford Financial Services Group, Inc. et al.*, No. 08-cv-1862 (D. Conn.) (the *Ninow* lawsuit and these six cases are collectively referred to as the "Original Complaints");

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in Section I of this Settlement Agreement.

WHEREAS, all of the Original Complaints alleged that, for certain periods of time, it was imprudent for the Plan to offer as an investment option a fund that invested primarily in the common stock of The Hartford, which investment option was known as The Hartford Financial Services Group, Inc. Stock Fund ("The Hartford Stock Fund" or "Fund");

WHEREAS, on January 21, 2009, all of the Original Complaints were consolidated into a single class action lawsuit, with all of the Plaintiffs serving as plaintiffs, captioned *In re Hartford Fin. Svc. Group Inc. ERISA Litig.*, No. 3:08-cv-1708 (PCD);

WHEREAS, on January 21, 2009, the Court also appointed the following law firms to serve as interim co-lead class counsel to represent the putative class: Izard Nobel LLP, Kessler Topaz Meltzer & Check, LLP[2] and Harwood Feffer LLP (collectively, "Class Counsel" as defined below);

WHEREAS, on March 23, 2009, Plaintiffs filed their Consolidated Class Action Complaint for Violations of the Employee Retirement Income Security Act of 1974 (the "Complaint");

WHEREAS, the Complaint alleged the following causes of action:  (1) breach of fiduciary duty, (2) failure to monitor fiduciaries, (3) co-fiduciary liability, and (4) knowing participation in a breach of fiduciary duty;

WHEREAS, the Complaint named the following companies, persons, and entities as defendants:  The Hartford, Hartford Fire Insurance Company, Hartford Fire Insurance Company Board of Directors, Ramani Ayer, Thomas M. Marra, David M. Johnson, David Znamierowski, Neal S. Wolin, Michael J. Drury, Gregory McGreevey, John N. Giamalis, Lynn Farrell, the Administration Committee of the Plan, Karen Macke, Ann de Raismes, Craig Morrow, Craig

---

[2] Barroway Topaz Kessler Meltzer & Check, LLP has been renamed Kessler Topaz Meltzer & Check, LLP.

Raymond, the Investment Committee of the Plan, William Bowman, Michael Bruder, Christopher Hanlon, Kate Jorens, Thomas Keene (collectively, the "Hartford Defendants" as defined below), and Evercore Wealth Management LLC (defined below as "Evercore") (collectively, the Hartford Defendants and Evercore are referred to herein as "Defendants");

WHEREAS, one of the primary theories asserted in the Complaint was that it was imprudent for the Plan to offer the Fund as an investment option during the class period (which was defined as running from December 10, 2007, to the present) and that Plan fiduciaries had paid little or no attention to the prudence of investing in the Fund during that period;

WHEREAS, on June 19, 2009, Defendants filed motions to dismiss the Complaint on various grounds;

WHEREAS, on January 13, 2010, the Court issued a three-page opinion denying the motion to dismiss (except as to Evercore, against which Plaintiffs had voluntarily dismissed their claims);

WHEREAS, following the ruling on the motion to dismiss, but before formal discovery had commenced, counsel for the Hartford Defendants and Class Counsel had discussions about the nature of the claims and the evidence that was likely to be revealed in discovery;

WHEREAS, shortly after those discussions took place, the Hartford Defendants provided a variety of documentation to Class Counsel relating to the Plan and the Fund , including but not limited to the minutes of the relevant Plan committees;

WHEREAS, in June 2010, this case was assigned to the Honorable Magistrate William I. Garfinkel for purposes of conducting settlement discussions and mediation;

WHEREAS, after an initial session with Magistrate Garfinkel, counsel for the Hartford Defendants sent a written settlement proposal to Class Counsel;

WHEREAS, following the receipt of that written settlement proposal, the Parties participated in several additional sessions with Magistrate Garfinkel, both in person in Bridgeport, Connecticut and by phone, and conducted extensive additional negotiations over a potential settlement;

WHEREAS, on February 7, 2011, the Parties participated in an in-person session in Bridgeport with Magistrate Garfinkel, and at that session, the Parties agreed on a settlement in principle, subject to negotiation of an acceptable settlement agreement;

WHEREAS, the Hartford Defendants have vigorously denied, and continue to vigorously deny, any wrongdoing and any liability based on the claims asserted in the Complaint;

WHEREAS, Plaintiffs believe that the claims asserted in the Complaint have merit, but despite their belief in the alleged strengths of their case, after considering (1) the benefits that Plaintiffs and the Settlement Class (defined below) will receive from the Settlement Agreement and (2) the uncertainties and risk of litigation, Plaintiffs have concluded that the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate, and are in the best interests of the Plaintiffs and the Settlement Class;

WHEREAS, entry into this Settlement Agreement is not an admission of liability by any of the Hartford Defendants;

WHEREAS, the Parties wish to promptly and fully resolve and settle with finality the Action (defined below);

NOW, THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed with prejudice on the terms and conditions set forth herein, subject to judicial approval.

## I.     DEFINITIONS.

1.1     "Action" shall mean *In re Hartford Fin. Svc. Group Inc. ERISA Litig.*, No. 3:08-cv-01708 (PCD).

1.2     "Administration Costs" shall mean (i) the costs and expenses associated with the production and dissemination of the Class Notice, and (ii) any other administrative expenses (including but not limited to Taxes and Tax-Related Costs and any cost charged by the Settlement Administrator and the Plan's recordkeeper, Fidelity) necessitated by performance and implementation of this Settlement Agreement and any Court orders relating thereto.  Administration Costs shall not include (i) the costs and expenses associated with the retention of an Independent Fiduciary engaged on behalf of the Plan to evaluate the fairness of the settlement and to satisfy the Department of Labor's Prohibited Transaction Exemption guidelines, PTE 2003-39, which costs and expenses shall be paid separately by the Hartford Defendants, or (ii) Attorneys' Fees.

1.3     "Agreement Execution Date" shall mean the date on which the final signature is affixed below to execute this Settlement Agreement.

1.4     "Attorneys' Fees" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Class Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action.

1.5     "Case Contribution Award" shall have the meaning ascribed to it in paragraph 7.1.

1.6     "Class Counsel" shall mean the following law firms:  Izard Nobel LLP, Kessler Topaz Meltzer & Check LLP, and Harwood Feffer LLP.

1.7    "Class Notice" shall mean the notice, identical in all material respects to that attached hereto as Exhibit A, to be provided directly to Settlement Class members pursuant to paragraph 2.5 and made available on the Settlement Website following the mailing of Class Notice.

1.8    "Class Period" shall mean the period from December 10, 2007 to August 31, 2011.

1.9    "Defendants" shall mean the Hartford Defendants and Evercore.

1.10   "Distributable Settlement Amount" shall have the meaning ascribed to it in paragraph 3.2(a).

1.11   "DOL" shall mean the United States Department of Labor.

1.12   "Effective Date" shall mean the date upon which the Final Order and Judgment becomes both final and no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.13   "Escrow Account" shall mean an account at an established financial institution agreed upon by the Parties that is established for the deposit of any amounts relating to the Settlement as funded by Defendants within twenty-eight (28) days of entry of the Preliminary Approval Order.  At all times, the Escrow Account shall be held *in custodia legis*, subject to the approval of the Court.

1.14   "Escrow Agent" shall mean the Settlement Administrator, or whatever other person or entity is selected by Class Counsel with the Hartford Defendants' approval, with such approval not to be unreasonably withheld, to act as escrow agent for

any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.15    "Evercore" shall mean Evercore Wealth Management LLC.

1.16    "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive Final Approval by the Court.

1.17    "Fee and Expense Application" shall mean the petition, to be filed by Class Counsel, seeking approval of an award of Attorneys' Fees.

1.18    "Final Approval" shall mean the entry of the Final Order and Judgment.

1.19    "Final Order and Judgment" shall mean a final order entered by the Court after the Fairness Hearing, identical in all material respects to that attached hereto as Exhibit D,  granting its approval of the Settlement.

1.20    "Fund" or the "Hartford Stock Fund" shall mean The Hartford Financial Services Group, Inc. Stock Fund.

1.21    "The Hartford" shall mean The Hartford Financial Services Group, Inc.

1.22    "Hartford Defendants" shall mean The Hartford, Hartford Fire Insurance Company, Hartford Fire Insurance Company Board of Directors, Ramani Ayer, Thomas M. Marra, David M. Johnson, David Znamierowski, Neal S. Wolin, Michael J. Drury, Gregory McGreevey, John N. Giamalis, Lynn Farrell, the Administration Committee of the Plan, Karen Macke, Ann de Raismes, Craig Morrow, Craig Raymond, the Investment Committee of the Plan, William Bowman, Michael Bruder, Christopher Hanlon, Kate Jorens, and Thomas Keene.

1.23   "Hartford Defendants' Counsel" shall mean Sidley Austin LLP and Wiggin & Dana LLP.

1.24   "The Hartford Stock Fund" or "Fund" shall mean The Hartford Financial Services Group, Inc. Stock Fund.

1.25   "Named Plaintiffs" or "Plaintiffs" refers to Douglas W.J. Ninow, S. Carl Morello, Betsy C. Dobson, Susan Richard, Margaret Mundy, Leslie Hubbard, Joe DeSalvo, Denise Jump, and Frank DeJesu.

1.26   "Parties" shall mean Plaintiffs and Defendants.

1.27   "Plan" shall mean The Hartford Investment and Savings Plan.

1.28   "Plan of Allocation" shall mean the plan or formula of allocation of the Distributable Settlement Amount as approved by the Court, which plan or formula shall govern the distribution of the Distributable Settlement Amount, in the form attached hereto as Exhibit B.  Notwithstanding any other provision of this Agreement, any revisions by the Court or any appellate court or otherwise relating solely to the Plan of Allocation shall not operate to terminate or cancel or otherwise affect this Agreement, provided that any such revisions do not require the Hartford Defendants or their affiliates to increase the Settlement Amount or incur additional expenses and costs to provide data not already readily available on their computer systems.

1.29   "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement pursuant to paragraph 2.1 identical in all material respects to that attached hereto as Exhibit C.

1.30 "Regulatory Change" shall have the meaning ascribed to it in paragraph 4.5(b).

1.31 "Released Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of the Action or are connected with acts, omissions, facts, statements, representations, matters, transactions, or occurrences that have been alleged or could have been alleged on behalf of the Settlement Class in the Action, including but not limited to: (a) matters pertaining to the prudence of the Fund; and (b) the breach of any fiduciary duties by any of the Defendants based on or relating to investment in the Fund by or through the Plan during the Class Period.  Nothing in this Settlement shall release or discharge any claim that (a) has been or could be asserted under the federal securities laws or the securities laws of any state (i) by any member of the Settlement Class for purchases of The Hartford common stock made outside the Plan or (ii) by the Plan for purchases of The Hartford common stock made on behalf of the Plan, or (b) has been asserted in the Amended Class Action Complaint for violations of the federal securities laws, filed on October 8, 2010, in *City of Monroe Employees' Retirement System v. The Hartford Fin. Svcs. Group, Inc. et al.*, No. 10-cv-02835-NRB (S.D.N.Y.) (Docket No. 65).

1.32 "Released Parties" shall mean all Defendants, as well as all of The Hartford's present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries,

administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees.

1.33    "Settlement" shall mean the compromise and settlement embodied in this Settlement Agreement.

1.34    "Settlement Administrator" shall mean A.B. Data, Ltd.

1.35    "Settlement Amount" shall mean the total amount of $1,935,000.

1.36    "Settlement Class" shall have the meaning ascribed to it in paragraph 2.1.

1.37    "Settlement Website" shall have the meaning ascribed to it in paragraph 2.7.

1.38    "Taxes" shall have the meaning ascribed to it in paragraph 3.1(g).

1.39    "Tax-Related Costs" shall have the meaning ascribed to it in paragraph 3.1(g).

1.40    "Unknown Claims" shall mean any Released Claims which Plaintiffs or any members of the Settlement Class do not know or suspect to exist in their favor at the time of the release of the Released Parties which, if known by them, might have affected their settlement with and release of the Released Parties.  Without admitting that California law in any way applies to this Agreement, with respect to any and all Released Claims, the parties agree that, upon the Effective Date, Plaintiffs and all Settlement Class members shall be deemed to have, and by operation of the Final Order and Judgment shall have, expressly waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and all Settlement Class members shall be deemed to have, and by operation of

the Final Order and Judgment shall have, expressly waived all provisions, rights and

benefits conferred by any law of any state or territory of the United States, or principle of

common law, which is similar, comparable or equivalent to California Civil Code § 1542.

Plaintiffs and all Settlement Class members shall be deemed by operation of the Final

Order and Judgment to have acknowledged that the foregoing waiver was separately

bargained for and a key element of the Settlement of which this release is a part.

## II.    MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED SETTLEMENT CLASS FOR SETTLEMENT PURPOSES.

2.1    *Motion for Preliminary Approval and Certification of Settlement Class.*
As soon as practicable after execution of this Agreement, Plaintiffs shall move the Court

(i) for preliminary approval of the Settlement, including entry of an order identical in all

material respects to the form of the Preliminary Approval Order attached as Exhibit C

hereto, and (ii) for purposes of this Settlement only, conditional certification of the

following settlement class (the "Settlement Class"):

> All persons, other than Defendants, who were participants in, or
> beneficiaries of, The Hartford Investment and Savings Plan at any time
> between December 10, 2007, and August 31, 2011, whose accounts
> included investments in the Hartford Financial Services Group, Inc. Stock
> Fund.

2.2    *Basis for Certification of Settlement Class.*  Plaintiff will seek

certification of the Settlement Class under Rule 23(b)(1), without any right of opt-out for

Settlement Class members.

-11-

2.3     *Certification for Settlement Purposes Only*.  The Hartford Defendants agree not to take any position with respect to certification of the Settlement Class only for the limited purpose of effectuating the Settlement Agreement.  The Hartford Defendants reserve all rights to object to the propriety of class certification in the Action in all other contexts and for all other purposes.

2.4     *Vacating Settlement Certification and Reservation of Rights*.  The certification of the Settlement Class shall be binding only with respect to the Settlement of the Action.  If the Settlement Agreement is terminated, or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Class shall be vacated, the Action shall proceed as though the Settlement Class had never been certified, and no reference to the prior Settlement Class or any documents related thereto shall be made for any purpose.

2.5     *Class Notice.*  Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall send the Class Notice by first-class mail to all Settlement Class members.  The Class Notice will be sent to the last known mailing address of the Settlement Class member, which mailing address will be updated through the National Change of Address ("NCOA") database by the Settlement Administrator before mailing (with all returned mail skip-traced and promptly re-mailed). The Hartford Defendants shall use their reasonable best efforts in good faith to provide Class Counsel, in electronic format, within sixty (60) days following the Agreement Execution Date, the names and addresses (as listed in the recordkeeper's records) of the Settlement Class members and timely respond to any reasonable written requests from Class Counsel or the Settlement Administrator for accessible data in Hartford's or the

Plan trustee's/record keeper's (past or present) custody or control necessary to effectuate notice and implement, enforce or determine the administrability of a Plan of Allocation (as described and/or provided for herein).  Class Counsel agree that they will keep all such information confidential, and will not use any such information for any purpose other than for the delivery of the Class Notice in this case.

2.6     *Class Action Fairness Act Notice.*  The Hartford Defendants shall comply with the notice requirements of 28 U.S.C. § 1715 and shall file a notice confirming compliance prior to the Fairness Hearing.

2.7     *Settlement Website.*  Within thirty (30) days of the entry of the Preliminary Approval Order, and no later than the first date that the mailing of the Class Notice occurs, the Settlement Administrator shall establish a settlement website that will contain the Class Notice and this Settlement Agreement and its exhibits (the "Settlement Website") and any other materials Class Counsel reasonably deems relevant to the Settlement.  The Class Notice will identify the web address of the Settlement Website.

2.8     *Settlement Information Line.*  Within thirty (30) days of the entry of the Preliminary Approval Order, and no later than the first date that the mailing of the Class Notice occurs, the Settlement Administrator shall establish a case specific toll-free telephone number (the "Settlement Information Line") with an interactive voice response (IVR) system by which Settlement Class members can obtain additional information regarding the Settlement and leave messages regarding the Settlement which will be directed to Class Counsel to handle as appropriate.

2.9     *No Rights of Exclusion*.  Settlement Class members shall not be permitted to opt out of the Settlement Class.

2.10    ***Right to Object***.  Settlement Class members shall be permitted to object to the Settlement.  The requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

## III.    PAYMENTS TO THE SETTLEMENT CLASS.

3.1    ***The Settlement Amount.***

(a)    The Hartford Defendants shall cause the Settlement Amount to be deposited by wire transfer into the Escrow Account within twenty-eight (28) days of entry of the Preliminary Approval Order.

(i)    The Settlement Amount is to be used solely for the purposes set forth in paragraph 3.1(h) below.

(ii)    Settlement Class members agree that the Settlement Amount shall not be considered "plan assets," as that term is defined in ERISA and the regulations promulgated pursuant to ERISA, until such time and in such amounts as they are disbursed from the Escrow Account.

(b)    Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.  The Hartford Defendants shall have no liability whatsoever for the acts or omissions of the Settlement Administrator.  The Settlement Administrator shall not disburse the Settlement Amount or any portion thereof except as provided for in this Agreement, by an order of the Court, or with prior written consent of Class Counsel.

-14-

(c)     The Settlement Administrator is authorized to execute transactions on behalf of the Settlement Class members that are consistent with the terms of this Agreement and with orders of the Court.

(d)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Settlement Agreement.

(e)     The Settlement Administrator shall, to the extent practicable, invest the Settlement Amount deposited pursuant to paragraph 3.1(a) above in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates.  The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Amount or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument.  Neither the Settlement Amount nor any portion thereof shall be commingled with any other monies in any instruments.  Any cash portion of the Settlement Amount not invested in instruments of the type described in the first sentence of this paragraph shall be maintained by the Settlement Administrator, and not commingled with any other monies, at a bank account, which shall promptly be identified to the Hartford Defendants' Counsel and Plaintiffs' Counsel (at either party's request) by account number and any other identifying

-15-

information.  The Settlement Administrator and Settlement Class members shall bear all risks related to investment of the Settlement Amount.

(f)     The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.  The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account.  The Hartford Defendants agree to provide the Settlement Administrator the statement described in Treasury Regulation §1.468B-3(e), upon request.  Neither the Hartford Defendants nor the Hartford Defendants' Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(g)     All (i) taxes on the income of the Escrow Account ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(h)     The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

(i)     Compensation to Settlement Class members determined in accordance with paragraph 3.2;

-16-

       (ii)     Any Case Contribution Award (as defined in paragraph 7.1 below) approved by the Court;

       (iii)    All Attorneys' Fees approved by the Court;

       (iv)    All Administration Costs; and

       (v)     Taxes and Tax-Related Costs.

3.2    ***Distribution to Settlement Class Members.***

     (a)    The money remaining from the Settlement Amount, including any accrued interest thereon, after the payment of any approved Case Contribution Award, approved Attorneys' Fees, Administration Costs, and Taxes and Tax-Related Costs, shall be available for distribution to Settlement Class members (the "Distributable Settlement Amount").

     (b)    The Distributable Settlement Amount will be divided among Settlement Class members in accordance with the Plan of Allocation attached hereto as Exhibit B or such other allocation plan as may be ordered by the Court.

     (c)    The Settlement Administrator shall disburse the Distributable Settlement Amount as promptly as possible after the Effective Date.  For Settlement Class members who still have an account in the Plan, the distribution will be made by a credit to their plan account, invested in accordance with the then-current investment election for the investment of new contributions, and if there are no current elections, to the Plan's stable value fund.  For Settlement Class members who no longer have an account in the Plan, the distribution,

subject to any applicable income tax withholding, will be made by check to the Settlement Class member's last known address.

3.3   **Treatment of Undistributed Funds**.  Any funds that cannot be distributed to Settlement Class members shall be transferred to the Plan and treated in accordance with the Plan's procedures relating to Plan funds of participants who cannot be located.

3.4   **Entire Monetary Obligation.**  In no event, and notwithstanding anything else in this Settlement Agreement (except with respect to any obligations it may be required to incur with respect to implementation of the structural changes described in section IV below), shall the Hartford Defendants be required to pay any amounts other than the Settlement Amount.  Except as provided in this paragraph 3.4 it is understood and agreed that the Hartford Defendants' monetary obligations under this Settlement Agreement will be fully discharged by paying the amounts specified in paragraphs 3.1(a) above, and that the Hartford Defendants shall have no other monetary obligations, or obligations to make any other payments under this Agreement or otherwise.

## IV.   CHANGES TO BUSINESS PRACTICES.

4.1   **Changes to Business Practices.**  As part of the Settlement of this Action, The Hartford agrees to make certain specified changes to its practices with respect to the Plan and communications with Plan participants as set forth in the remaining paragraphs of this section IV.  It is understood and agreed by the Parties that by making the changes described in section IV, the Hartford Defendants do not agree with or in any way admit, and shall not be deemed to agree with or in any way admit, (a) any theories of Plaintiffs or Class Counsel regarding the Hartford Defendants' liability in the Action, or (b) that any of their prior or existing business practices violate any federal or state laws, statutes,

or regulations.  The Hartford Defendants are agreeing to make the changes described in this section IV solely to resolve disputes and provide agreed clarity on a going-forward basis as to the propriety of its future conduct.

4.2     ***Enhanced Communications to Participants Regarding the Fund***.  The Hartford Defendants will agree to make the following enhancements to its disclosures to Plan participants concerning investments in The Fund:

(a)     ***Quarterly Statement.***  The Plan currently sends a quarterly statement either in hard copy or, in accordance with a participant's direction, via email notification of the online availability of the quarterly statement to each Plan participant.  The Hartford will include in the hard copy quarterly statement, or, for participants who have elected to view and manipulate their quarterly statements online, provide in the quarterly statement information available online on The Hartford benefits website, the following statements to Plan participants:  (1) the Fund's value depends almost entirely upon the financial performance of The Hartford; and (2) the Fund has the highest risk of all of the investment funds under the Plan, because the Fund is not diversified -- it invests in only one company, The Hartford.  The Hartford will agree to make the disclosure described in this paragraph for the period identified in paragraph 4.2(f) below.

(b)     ***Quarterly Road Map***.  The Plan currently sends a quarterly information newsletter by either regular mail or email to active Plan participants (*i.e.*, ones currently employed by The Hartford), entitled "Road Map."  On some occasions, the articles in those publications discuss the Plan and/or the Fund.  In future publications that contain articles relating to the Fund, Hartford will agree to

include the following statement as part of the article: "Reminder about The Hartford Stock Fund: The Hartford Stock Fund is a non-diversified investment fund that invests in only a single company – The Hartford – and therefore it has the highest risk of all of the investment funds under the Plan. The people who might want to invest in The Hartford Stock Fund are those persons whose investment portfolio can withstand the volatility and high risk of investment in a single stock." The Hartford will agree to make the disclosure described in this paragraph for the period identified in paragraph 4.2(f) below.

(c)     *Summary Plan Description ("SPD").* A SPD is generally emailed annually to active Plan participants, and the SPD contains disclosures concerning the risk of investing in The Hartford Stock Fund and a chart that shows graphically that the Fund is the Plan investment option with the highest level of investment risk. The Hartford will agree to maintain the current disclosures for the period identified in paragraph 4.2(f) below.

(d)     *Fund Fact Sheet.* The Hartford makes available on the website of the Plan recordkeeper (currently Fidelity) fact sheets about investment options under the Plan. The fact sheet for the Fund contains disclosures about the risks of investing in a single company fund and the benefits of diversification. The Hartford will agree to maintain the current disclosures for the period identified in paragraph 4.2(f) below.

(e)     *Fund-Specific Information.* The Hartford makes available on the website of the Plan recordkeeper (currently Fidelity) a description that contains additional information about the Fund, including a disclosure that investing in a

-20-

nondiversified, single-stock fund involves more investment risk than investing in a diversified fund. The Hartford will agree to maintain the current disclosures for the period identified in paragraph 4.2(f) below.

(f) *Duration of Enhanced Disclosures.* The Hartford will agree to provide or maintain the disclosures described above for the following periods of time: (a) with respect to the quarterly statement (paragraph 4.2(a) above), the additional information Hartford is agreeing to provide will appear every other quarter for a period of two years from the date of Final Approval; (b) with respect to the quarterly Road Map (paragraph 4.2(b) above), the disclosure will be included in every article that discusses the Fund for a period of two years from the date of Final Approval; (c) with respect to the SPD (paragraph 4.2(c) above), the disclosures will appear in the annual SPD for each of the two calendar years after the year in which the Preliminary Approval is entered; and (d) for the remaining documents (paragraphs 4.2(d) and (e) above), the disclosure will be maintained for two years from the date of Final Approval.

4.3 *Improved Fiduciary Training.* In each of the two calendar years following the entry of the Preliminary Approval Order, Hartford agrees to conduct an annual training session for the members of the Investment Committee of the Plan and Administration Committee of the Plan. This annual training session will focus on the proper execution of fiduciary duties. This annual training session will be conducted by persons not employed by The Hartford or any of its affiliates, and the content and length of the training session will be determined by the persons conducting the training. The

Hartford shall have sole discretion to choose the persons or entities that will conduct such training.

    4.4    ***Independent Fiduciary.***  Effective January 16, 2009, The Hartford retained an independent fiduciary to make decisions with respect to the Fund.  The Hartford agrees to continue its use of an independent fiduciary for the Fund for two years from the date of Preliminary Approval Order.

    4.5    ***Changes in Applicable Law.***

    (a)    Notwithstanding anything in this section IV to the contrary, the Hartford Defendants shall not be required to comply with any provision of this section IV should any change in applicable law render such compliance unlawful.

    (b)    Notwithstanding anything in this section IV to the contrary, the Hartford Defendants shall have the right, at their sole option, to modify any of the commitments made in paragraphs 4.2, 4.3, and 4.4 if Congress, the DOL, or any other applicable regulatory or self-regulatory body imposes different or other substantive requirements, whether through statute, regulation, official guidance, or otherwise (a "Regulatory Change"); provided, however, that, in the event of a Regulatory Change that affects only certain of the provisions of this section IV, the Hartford Defendants shall be required to continue to comply with all other provisions of section IV that are not affected by the Regulatory Change.  In the event of a Regulatory Change, the Hartford Defendants' compliance with the Regulatory Change shall be deemed compliance with the terms of this Agreement to the extent that the Regulatory Change is inconsistent with the changes to the business practices outlined in section IV.

-22-

# V.    SETTLEMENT ADMINISTRATION.

5.1    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel and the Court as circumstances may require.

5.2    It is understood and agreed by the Parties that the proposed Plan of Allocation is not part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Agreement or affect the finality of the Court's Final Order and Judgment approving the Settlement or any other orders entered pursuant to the Agreement.  Notwithstanding the foregoing, or anything else in this Agreement, any revisions to the Plan of Allocation that would require the Hartford Defendants or their affiliates to incur additional expense or costs or to provide data not already readily available on their computer systems shall be deemed a material alteration of this Agreement, and entitle the Hartford Defendants, at its election, to terminate the Agreement.

5.3    The Hartford Defendants and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to:

(a)    any act, omission or determination of the Settlement Administrator, Class Counsel or designees or agents of Class Counsel or the Settlement Administrator; or

(b)    any act, omission or determination of Class Counsel or their designees or agents in connection with the administration of the Settlement;

-23-

5.4    The Settlement Administrator shall provide to Class Counsel, no less than monthly, a full accounting of all expenditures made in connection with the Settlement, including any distributions from the Settlement Amount.  The Hartford Defendants' Counsel may obtain a copy of such accounting from Class Counsel upon request, which request shall not be unreasonably denied.

5.5    The Settlement Administrator shall provide such information as may be reasonably requested by the Hartford Defendants or Class Counsel to implement any distribution of funds under this Agreement.

## VI.    RELEASE.

6.1    *Release*.  Upon the Effective Date, the Settlement Class members, on behalf of themselves, their predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Claim, whether arising before or after the date of the Final Order and Judgment, against any and all of the Released Parties, provided, however, that nothing herein is meant to bar any claim seeking enforcement of this Agreement or court orders relating to it.

6.2    Upon the Effective Date, Defendants shall conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge Plaintiffs, the Settlement Class, and Class Counsel from any and all claims solely relating to the institution or prosecution of the Action or relating to the Settlement of any of the Released Claims.

-24-

## VII.   CASE CONTRIBUTION AWARDS.

7.1     Plaintiffs intends to seek a Case Contribution Award not to exceed the amount of $4,000.00 per Plaintiff, which will be subject to Court approval (the "Case Contribution Award").  The Hartford Defendants will not take any position with respect to any request for a Case Contribution Award up to that amount.  Any Case Contribution Awards approved by the Court will be paid within thirty (30) days of the Effective Date. The Case Contribution Award shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount on or after the Effective Date and prior to the distribution to the Settlement Class members.

7.2     Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Award are to be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the Case Contribution Award, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## VIII.   ATTORNEYS' FEES.

8.1     Class Counsel intends to submit a Fee and Expense Application, seeking a fee award based on the value of the Settlement and the work performed in an amount not to exceed 25% of the Settlement Fund and for reimbursement of expenses.  Defendants agree to take no position on this Application.  Any amount awarded by the Court in response to such Fee and Expense Application shall be paid  by the Settlement

Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount. Class Counsel may direct payment of any court-approved award of fees and expenses from the Settlement Amount after the date on which the Court enters both the Final Order and Judgment and (if separate) an order approving Class Counsel's application for fees and expenses. In the event that attorneys' fees and expenses are paid before the Effective Date, Class Counsel shall provide the Escrow Agent a surety bond or letter of credit in the amount of such attorneys' fees and expenses, acceptable to Defendants, whose acceptance shall not be unreasonably withheld, to be held pending the Effective Date. In the further event that, before the Effective Date, the Settlement is set aside or the award of attorneys' fees and expenses is set aside or modified, Class Counsel shall promptly deposit into the Escrow Account the attorneys' fees and expenses paid out which has been set aside or modified, plus interest accrued thereon for the period from payment from the Escrow Account to Class Counsel at a rate equal to the rate of interest earned by the Escrow Account during the same period.

      8.2    Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Amount are to be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the award of Attorneys' Fees, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## IX.   CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT.

9.1     If the Court or, in the event of an appeal, any appellate court refuses to approve, or modifies any material aspect of this Agreement or the proposed Preliminary Approval Order or Final Order and Judgment, the Hartford Defendants may terminate this Agreement and the Settlement as set forth below.

9.2     This Agreement and the Settlement shall terminate and be cancelled if one of the Parties provides written notification of an election to terminate the Settlement within ten (10) business days after any of the following events:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the Preliminary Approval Order attached hereto as Exhibit C;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the Final Order and Judgment attached hereto as Exhibit D;

(c)     The Court's Final Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

(d)     The Effective Date does not occur for some other reason.

For purposes of this Agreement and this paragraph 9.2, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning the Plan of Allocation (except as set forth in the last sentence of paragraph 5.2), the administration of the settlement or the persons performing such administrative functions, or the amount,

-27-

advancement or award of any Attorneys' Fees or Case Contribution Award shall constitute grounds for cancellation or termination of the Agreement.

9.3     This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to or request material modifications to the Agreement, and (b) within ten (10) business days of receiving any such objection or request, the Hartford Defendants provide written notice of their election to terminate the Settlement.

9.4     If for any reason this Agreement is terminated or fails to become effective, then:

(a)     The Parties shall be deemed to have reverted to their respective status in the Action as of February 7, 2011, and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)     In addition to this section IX and its provisions, paragraphs 2.3 and 2.4 and section X shall survive any termination of this Settlement.

(c)     The Settlement Amount less Administrative Costs paid or incurred shall be returned to the Hartford Defendants.

## X.     NO ADMISSION OF WRONGDOING.

10.1     The Hartford Defendants have vigorously denied, and continue to deny, that they committed any violation of ERISA or other laws, and have vigorously denied and continue to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or

asserted in the Complaint or the Action. The Hartford Defendants are agreeing to this Settlement solely because it provides substantial and meaningful benefits to the Settlement Class and will eliminate the substantial burden, expense and uncertainties of further litigation and the concomitant distraction of resources and efforts from its business. This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, is not and shall not be construed as an admission by the Hartford Defendants or the Released Parties of any fault, wrongdoing, or liability whatsoever. This Agreement, and any of its terms, and any agreement or order relating thereto, shall not be offered by any party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of the Hartford Defendants or any of the Released Parties. However, nothing contained in this paragraph shall prevent this Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Order and Judgment. This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to the Released Parties filing the Agreement and/or the Final Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XI.   MISCELLANEOUS.

11.1   *No Disparaging Statements.*  Plaintiffs and Class Counsel shall make no statements to the press or make any other public statements describing this Settlement that disparage any Party or accuse any Party of wrongdoing.  The Parties will agree upon a joint statement to utilize in response to any inquiries from the press or otherwise regarding this Settlement.

11.2   *Duty to Cooperate*.  The Parties promise to cooperate in good faith and to take all actions reasonably necessary to effectuate this Agreement.  The Parties further agree that if, before the Effective Date, any issues regarding interpretation or implementation of, or compliance with, this Settlement Agreement arise among the Parties and such issues cannot be resolved by the Parties, that such issues shall be mediated before Magistrate Garfinkel, who will make a non-binding recommendation to the Court.

11.3   *Entire Agreement*.  This Agreement is the entire agreement among the Parties and it supersedes any prior agreements, written or oral, including any written settlement offers or emails exchanged between the Parties.  This Settlement Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

11.4   *Construction of Agreement*.  This Settlement Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement.  All Parties have participated in the drafting of this Agreement, and any ambiguity should not be resolved by virtue of a presumption in favor of any Party.  The Settlement Agreement was reached at arm's-length by Parties represented by counsel.

11.5   *Executed in Counterparts*.  This Settlement Agreement may be executed by exchange of executed signature pages by facsimile or Portable Document Format ("PDF") as an electronic mail attachment, and any signature transmitted by facsimile or PDF via electronic mail for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same instrument.

11.6   *Notices.*  Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage pre-paid, with copies by facsimile or e-mail to the attention of Class Counsel or the Hartford Defendants' Counsel (as well as to any other recipients that a court may specify).  As of the date hereof, the respective representatives are as follows:

|  |  |
|---|---|
| For the Hartford Defendants: | **David F. Graham**<br>Sidley Austin LLP<br>1 South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7000<br>Fax:  (312) 853-7036<br>dgraham@sidley.com |
| For The Settlement Class: | **Wayne T. Boulton**<br>Izard Nobel LLP<br>29 South Main Street, Suite 215<br>West Hartford, CT 06107<br>Telephone:  (860) 493-6295<br>Fax:  (860) 493-6290<br>rizard@izardnobel.com |

11.7 **_Extensions of Time._**  The Parties may agree, subject to the approval of a court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

11.8 **_Governing Law._**  This Agreement shall be governed by and construed in accordance with the laws of Connecticut without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Connecticut.

11.9 **_Expenses._**  Except as otherwise expressly set forth herein, each Party hereto will pay all of its own fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to its or his negotiation, preparation or compliance with this Agreement, and including any fees, expenses, and disbursements of its counsel, accountants, and other advisors.  Nothing in this Agreement shall require the Hartford Defendants to pay any monies other than as expressly provided herein.

11.10 **_Retention of Jurisdiction_**.  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

IN WITNESS WHEREOF, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

ON BEHALF OF PLAINTIFFS AND THE SETTLEMENT CLASS:

Dated: November 17, 2011

IZARD NOBEL LLP

Robert A. Izard (CT 01601)
William Bernarduci
Wayne T. Boulton
29 South Main Street, Suite 215
West Hartford, Connecticut 06107
Tel: (800) 797- 5499
Fax: (860) 493-6290

Class Counsel

KESSLER TOPAZ
MELTZER & CHECK, LLP

Joseph H. Meltzer
Edward W. Ciolko
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

Class Counsel

HARWOOD FEFFER LLP

Robert I. Harwood
Daniella Quitt
488 Madison Avenue
New York, NY 10022
Tel:(212) 935-7400
Fax:(212) 753-3630

Class Counsel

-33-

_____
Denise Jump

Date:


_____
Frank DeJesu

Date:


**ON BEHALF OF THE HARTFORD FINANCIAL SERVICES GROUP, INC.**

_____

Name: James R. Heavner Jr.

Title: Senior Vice President

Date: November 4, 2011

-34-

CH1 5957645v.7